## HENRY J. OVERMAN v. THE HOBOKEN CITY BANK.

1. Without stating in the declaration that the association called the "clearing house" is an institution authorized by special legislation, or any authority existing in such association, in any way, to alter or modify the law merchant in regard to checks or commercial paper, such association cannot be held to have power to make usages or rules to bind those who are not parties to its organization.

2. Its usages and rules, if not in conflict with law, may, by the implication of tacit adoption in the contracts of members, bind them in the same way that a general usage of trade may bind those who deal with reference to it, and who are therefore held impliedly to adopt it. But those who are not bound by such usages, and have not contracted with reference to them, have no right to avail themselves of them to create an obligation against those who are parties to their adoption, and bound by them *inter sese* only.

3. Customs and usages in derogation of the common law must be strictly pleaded, and when well pleaded the count must show a case clearly within the usage.

4. Whether a failure to return a check (when sent to the bank on which it is drawn) in a reasonable time amounts to an acceptance, must always depend on the particular circumstances of each case. A failure to return is not of necessity an acceptance; they are not convertible terms.

5. In order that a promise to accept a bill shall amount to an acceptance, the holder must have taken the bill on the faith of the promise, and until such negotiation there is no acceptance; it amounts to nothing but a contract between the drawer and drawee collateral to the bill, which, like all other contracts, must have a consideration to support it.

On demurrer to declaration.

Argued at February Term, 1862.

For the plaintiff, *S. B. Ransom.*

For the defendants, *J. H. Lyons* and *I. W. Scudder.*

The opinion of the court was delivered by the

CHIEF JUSTICE.   This is a special action on the case against the defendant, upon whom Andre & Brother had drawn a check, dated October 29th, 1859, for $2730.

The case is before us upon demurrer to the plaintiff's declaration.   The defendant has taken issue on the first and fifth counts of the declaration, and demurred to the second, third, and fourth counts.

The difference in the frame of these three counts will render an examination of each necessary to the proper decision of the case.

The second count, after alleging the drawing of the check, and its delivery to the plaintiff, who was its payee, proceeds to state that at that time it was, and ever since has been the established rule, use, and custom of the association of banks, called the "clearing house" of the city of New York, and of all the banks of the city and elsewhere belonging to and connected with the clearing house, and of the defendant, that any check drawn upon any one of the said banks, and received in payment or for collection, of any other of the said banks, and presented by the bank receiving the same through the clearing house to the bank against which the said check was drawn, should be returned, if not paid, to the bank presenting the same for such payment on the same day on which it was so presented, or at furthest early on the morning of the day after the said presentation for payment and before the commencement of the business hours of that day, or in default thereof, that the said bank thus failing to return the said check should be liable to the holder thereof to pay the amount of the check, whether having funds of the drawer or not.   The count then states that the Ocean Bank and Bank of Commerce were both members of the clearing house, and had assented to and were bound by the rules and usages set forth ; that the Ocean Bank had been appointed, and was the agent of the defendant to redeem its bills and pay drafts on it at the banking house of the Ocean Bank in New York, and to receive and return through

the clearing house drafts and checks drawn on the defendant, in conformity to the rule of the clearing house just stated; and that the Ocean Bank had for a long time so done business with and for the defendant, and that the defendant had for a long time conformed to the said usage, and agreed to be bound by it; that the plaintiff, on the 29th of October, 1859, deposited this check for collection with the Bank of Commerce, which bank, on the 31st, the 30th being Sunday, duly presented the check, and demanded payment thereof of the defendant, through its agent, the Ocean Bank, at the clearing house in the city of New York, according to the usage stated as that of the New York banks and of the defendant, and that the defendant retained the said check, without notice of nonpayment, from that time until the second day of November, when it returned the same to the Bank of Commerce with notice of nonpayment; that Andre & Brother failed on the first of November; that by reason of the neglect to return the check in time, the plaintiff has lost the money.

It will be observed that the count does not state directly the existence or mode of organization of the association called the " clearing house," nor does it show whether it is an institution authorized by special legislation, or merely a private organization. No authority is shown to exist in the association, in any way, to alter or modify the law merchant in regard to checks or commercial paper.

Such an association can have no power to make usages or rules to bind those who are not parties to its organization. Its rules and usages, if not in conflict with law, may by the implication of tacit adoption in the contracts of members, bind them in the same way that a general usage in trade may bind those who deal with reference to it, and are therefore held impliedly to adopt it. *Robson* v. *Bennett*, 2 *Taunt.* 388; 1 *Parsons on Con.* 229.

But those who are not bound by such usages, and have not contracted with reference to them, have no right to avail themselves of them to create an obligation against those

who are parties to their adoption, and bound by them *intersese* only.

It is manifest that the usage and rules set up in the count were adopted by the associated banks for their own convenience, and to facilitate the transaction of business and avoid the trouble and expense of special messengers to demand payment of checks, bills, and notes, and not for the purpose of enlarging the rights of the holders of commercial paper who are not members of the association. It was a rule designed to operate strictly among themselves for their own convenience in the despatch of business.

Neither the plaintiff nor the defendant were members of the association, nor does the declaration state that the plaintiff, when he left the check with the Bank of Commerce, knew of the existence of the usage, or in any way modified his contract with that bank for the collection of the check so as to embrace the benefit of the usage for himself.

If the Bank of Commerce, in pursuance of the usage, had a right to hold the Ocean Bank for a failure to comply with its terms, could not that bank relieve the Ocean Bank of such liability without incurring any to the plaintiff? It could do so, for the manifest reason that this usage, in contravention of the common law, formed no part of the contract between the plaintiff and the Bank of Commerce. It could not, unless adopted and sanctioned by both the parties, be binding on both.

That the Bank of Commerce, in the collection of the check, acted as agent of the plaintiff can make no difference. This fact would not bring the case within the operation of the rule, that the principal is entitled to the benefit of the contract of the agent, while transacting the business of the principal.

This is undoubtedly true as to all the legal rights acquired by the agent for the benefit of the principal; but we have already said that this was a mere labor-saving usage, designed for the exclusive benefit of the agent, the adoption of which could not affect the principal without his assent.

If the Bank of Commerce had omitted its duty in the presentation of the check in due time, so that by the failure of the defendant the plaintiff had lost his money, it would have been responsible to the plaintiff for that neglect.

That is not the allegation here; but the insistment of the plaintiff is, that his agent, the Bank of Commerce, and the ·defendant's agent, the Ocean Bank, had an arrangement, or were parties to one, by which the defendant was to be responsible for the amount of the check if the Ocean Bank did not return it to the Bank of Commerce on the same day it was presented to the Ocean Bank, or the next morning before ten o'clock.

The usage is defectively set forth in the count, if the meaning of the pleader was to state that this check was to be left, by the presenting bank, with the bank on which it was drawn, or its agent. It is supposed that was the intention of the pleader.

It would be impossible for a bank upon which a check was drawn, to return it by a given time, if it were not left in the possession of that bank; if merely presented by the collection bank without parting with the possession, no return would be possible; nothing could happen in case of nonpayment but a mere refusal to pay.

If, therefore, that was the usage, and it was so set forth in the count, it is defective in not setting forth that the check was delivered by the Bank of Commerce to the defendant, or its agent, the Ocean Bank.

The declaration is defective in not setting forth the usage intelligibly. As it is set forth, it is absurd; and if it were set forth as I have supposed it was intended to be, the usage was not complied with.

Customs and usages in derogation of the common law must be strictly pleaded; and when well pleaded, the count must show a case clearly within the usage. If a case can be conceived calling for the application of the rule, it is the present, where it is attempted to make the defendant liable,

by mere force of usage, to pay a check of a drawer without any funds of his in its hands.

The usage pleaded is, that when a check is presented at the clearing house *to a bank against which the said check was drawn*, then if not returned within the same day, or the next, before ten o'clock, the bank on which it was drawn shall be liable.

It does not cover the case of a presentation to an agent. The presentation must be *to the bank on which it was drawn.* This is an essential difference. For such a purpose, the agent does not represent the principal. The usage, if contemplating a presentation to the principal, may be reasonable, and very unreasonable if extending to the agent. The plaintiff has failed to bring his case within the usage.

This count cannot be supported upon the ground that the facts alleged show an acceptance independent of the usage. The count does not show that the check ever was in possession of the defendant: if not, there could be no failure to return it so as to make the defendant liable. Whether a failure to return a check (when sent to the bank on which it is drawn) in a reasonable time amounts to an acceptance, must always depend on the particular circumstances of each case. *Jeune* v. *Ward*, 2 *Starkie* 326, and cases there cited.

A failure to return is not of necessity an acceptance: they are not convertible terms. It may or may not be: there may be a sufficient excuse for the failure. If the plaintiff relied on an acceptance, he should have stated it, as he has done in the first count.

The third count alleges the drawing of the check in New York, as in the second, by the same persons, and its delivery to the plaintiff and the existence of an usage of the defendant to receive, through the Ocean Bank of New York, demand of payment of checks drawn upon defendant in New York; that the Ocean Bank was its agent for that purpose, and that it was the usage and agreement between that bank and defendant that all checks drawn on it in New York, or used there and presented to the defendant through the

Ocean Bank, which should not be returned to the holders thereof on the same day, or the day after before ten o'clock in the forenoon, should be paid by the defendant (without saying to whom); that the plaintiff, relying on the said usage and agreement between defendant and the Ocean Bank, presented this check, on the 31st October, 1859, to the Ocean Bank for payment; that that bank, on the same day, presented it to the defendant for payment; that defendant received the check from the Ocean Bank on that day, and that the defendant did not return the same to the plaintiff, the holders thereof at that time, either on that day or the next, before ten o'clock in the forenoon, and that by means thereof and by force of the agreement between the Ocean Bank and defendant, and by force of the statutes of New York, the defendant became liable to pay the amount of the check to the plaintiff.

The plaintiff's action on this count is not for a breach of a promise to accept the check, and pay it—not for an acceptance,—but is founded entirely on an usage and agreement between its agent, the Ocean Bank, and the defendant, to pay all checks drawn or used in New York on the defendant, and presented to it through the Ocean Bank, unless returned the same day or the next before ten o'clock in the forenoon. The count does not allege that defendant had any funds of the drawer, or that the plaintiff sustained any special damage by the failure to return the check.

The plaintiff avers that he was the holder of the check at the time of presentation, and that he presented it to the Ocean Bank, who at the time was the agent of the defendant, to receive demand of payment.

Under this state of facts, the plaintiff shows no interest in the contract on which he counts. He shows himself as a stranger to it in every sense. The Ocean Bank is not his agent, but that of the defendant; he can claim no benefit of a contract between the defendant and its agent. As a contract, it is *nudum pactum*; no consideration is shown as passing either from the Ocean Bank or the plaintiff.

Upon what possible grounds can the plaintiff claim the right to enforce a promise, for which there was no consideration, to the terms and parties of which he is a stranger? As was remarked in regard to the last count, the facts pleaded are not equivalent to an acceptance.

The fourth count states the making and delivery of the check; the agency of the Ocean Bank for the defendant; the established usage of the defendant to pay checks on the defendant presented at the Ocean Bank, if not returned as above stated; that the plaintiff was cognizant of the usage; that he presented the check at the Ocean Bank, and demanded payment; that defendant, through that bank as its agent, received the check, took possession of it, and promised the plaintiff to pay it if not returned as above stated; that it was not returned, and has not been paid; that Andre & Brother, the drawers, became insolvent on the first day of November, after ten o'clock, and before the check was returned.

The attempt in this count is to charge the defendant with the check on the footing of an express contract between the plaintiff and defendant to pay the check, if not returned within the given time.

If this is to be treated either as a promise to accept or a promise to pay it cannot avail the plaintiff. No consideration to support the promise is stated or appears. It is not the case of a check taken on the faith of such a promise. The holder gave nothing for the promise—relinquished no advantage—nor did he take the check because the drawers had made any absolute or conditional promise to pay it. The drawees never did accept it, nor did their agents.

All the cases which hold that a promise to accept a bill amounts to an acceptance, put the doctrine on the ground that the holder has taken the bill on the faith of the promise; that until such negotiations there is no acceptance, nothing but a contract between the drawer and drawee collateral to the bill, which, like all other contracts, must have a consideration to support it. *Mason* v. *Hunt, Doug.* 297; *Pierson*

v. *Dunlop, Cowp.* 571; *Coolidge* v. *Payson,* 2 *Wheat.* 66; *Johnson* v. *Collings,* 1 *East* 98; *Clark* v. *Cock,* 4 *East* 57; *Schimmelpennich* v. *Bayard,* 1 *Pet.* 284; *Boyce* v. *Edwards,* 4 *Pet.* 111; *Russell* v. *Wiggins,* 2 *Story's C. C. Rep.* 237; *Adams* v. *Jones,* 12 *Pet.* 207; *Carrigus* v. *Morrison,* 2 *Metc.* 381.

I can find nothing in this case to distinguish it from that of a contract without consideration, and therefore *nudum pactum.*

The three counts demurred to are all defective.

Judgment for demurrant.